The next case on the call to court is agenda number three, number 129-767, People v. State of Illinois v. Cedric White. Good morning. May it please the Court and Counsel, my name is Rachel Kinstrand, Assistant Appellate Defender with the Office of the State Appellate Defender, and I represent the Petitioner Appellate Cedric White. On appeal to this Court, White's sole claim was that the Appellate Court erred in holding that he failed to state a meritorious claim or defense because, pursuant to this Court's decision in People v. Jones, his guilty plea waived his as-applied challenge to a sentence. He contended that, unlike Jones, his open guilty plea, with no agreement as to his sentence, did not implicate the same contract principles as there is no negotiation with respect to his sentence, and therefore there was no waiver of his sentencing challenge. For the first time in this Court, the State concedes what it vigorously contested below. White's open guilty plea did not waive his constitutional challenge to a sentence as he made no agreement as to his sentence, and therefore contract principles did not apply. The State further wrote that this Court's own rules underscored its concession, noting that in the context of an open guilty plea, a criminal defendant can challenge his sentence without moving to withdraw his guilty plea. This Court should accept the State's concession as it is well-founded in the law and supported by the record. First, while a voluntary guilty plea does waive several constitutional claims, there is no blanket rule that all constitutional claims are waived by the entry of a voluntary guilty plea. For example, defendants are permitted to challenge their convictions, even pursuant to a plea under the Second Amendment, and due process challenges have certainly been leveled and accepted despite the entry of a plea. But second, Jones cannot be read to foreclose a sentencing challenge in White's case. An essential part of this Court's holding was that, because the defendant entered a guilty plea in exchange for an agreed-upon sentence, contract principles precluded a constitutional challenge to the sentence as it was part of his contract. The same reasoning cannot apply in White's case, where there was no agreement as to his sentence. Simply put, White cannot be in breach of a nonexistent agreement in challenging his sentence. Moreover, this Court's precedent allows for a sentencing challenge, such as a challenge to an excessive sentence, where there is no agreement as to his sentence. As pointed out by the State, this Court's own rules are structured depending on the type of guilty plea entered, and in the absence of any agreement as to his sentence, a criminal defendant is not required to seek withdrawal of his guilty plea before moving to reconsider. Nor can a defendant properly waive a sentencing challenge in the absence of an agreement solely based on the entry of an otherwise knowing involuntary plea. A defendant cannot have intentionally relinquished a known right where he made no agreement as to his sentence. Nothing in these proceedings support White's waiver. There was no agreement as to sentence. White threw himself on the mercy of the Court and asked for something less than a 40-year term. After accepting his guilty plea and sentencing him, the Court brought him back to re-admonish him, stating that he entered a blind plea and needed new, albeit ultimately incorrect, admonishments. Defense counsel further filed a boilerplate motion to reconsider his sentence as quote-unquote excessive, further indicating a lack of any waiver. As a result, the State's concession is well-founded in the law and supported by the record in this case, and this Court should accept it, as well as the arguments White made in his brief. The appropriate remedy in this case is to send this case back to the Appellate Court. At the State's own invitation, the Appellate Court never ruled on whether White stated a meritorious as-applied challenge to his sentence. The Court should not review this claim in the first instance, where the Appellate Court expressly declined to rule on his as-applied challenge to do so circumvents well-established appellate process. And notwithstanding the arguments that remand is appropriate, his as-applied challenge is properly raised in this proceeding. It requires additional factual development to show how his brain, taking into consideration his particular circumstance, was more like a juvenile at the time of the offense than like a full-fledged adult. Counsel, let me ask you. First of all, why did it take so long for him to challenge, to raise the challenge that he's raising, considering that the science that he's relying on has been out there for a while? Well, because of the circumstances surrounding the entry of his plea and the fact that his plea counsel didn't file a notice of appeal, he wrote this petition without the benefit of any of his transcripts. He really wasn't aware of, because he's an indigent defendant, he didn't automatically get a copy upon the filing of a notice of appeal on the pointing of our agency. So he really operated a little bit blind when he wrote, with the assistance of another inmate, his pro se petition for relief from judgment. So also I would say that, you know, he did accept responsibility. He's never denied the seriousness of the offense. I think he became aware of the sentencing challenges, and I don't think they were really applied to so-called emerging or young adults until 2015 when this court decided Thompson. And so, you know, it did take him a while to muster up a pro se petition. But I would point out that this was filed in 2019. And so we were here 2024 before this court on a claim, really, of whether his open guilty plea forecloses his claim. Now we have a concession. Certainly, had there been a concession and a responsive pleading, we might not have taken five years to get to where we are today. Counsel, let's talk about the vehicle your client is using to pursue this claim. Is a 214-01 petition the proper vehicle? I think that this court's decision in Thompson suggests that it is. Certainly, in the civil context and other contexts, there have been claims that raise both legal and factual challenges. Since this isn't the type of claim that this court has held can be raised on direct appeal without additional factual development, and since this court has held that it's appropriate for collateral proceedings, I don't think he should be foreclosed from using a Section 214-01 petition to raise his as-applied challenge because, like a post-conviction petition, the same type of factual development is required. Counsel, what facts exist that were unknown to the court at the time of trial that would have prevented entry of judgment? Because that's what we're looking at with respect to a 214-01 petition. We're looking at the facts, but also to the extent the state contends that he can't raise a legal claim and to the extent this relies on both the developments in the law and the developments of his brain science as applied to him, I think that the Section 214-01 petition contemplates both. It contemplates both a legal and a factual proceeding. Now, I will admit that the facts that's set forth in this petition are not particularly fleshed out. I will say that he had a difficult upbringing. I don't think it's adequately brought out in the pretrial investigative report that was used as a pre-sentence investigative report. In particular, you know, and I'm loath to bring up some of the things that I know as a result of my representation, but not as a result of the pleadings, you know, that his mother had a drug problem. They were moved from house to house. Obviously, the pre-sentence investigative report indicates that his father died at a young age and he didn't know his father. He was raised by grandparents. But I think that the scaling point for some of this stuff is that we're not considering, we didn't have the benefit in the late 1990s of understanding how childhood trauma and brain development really affect someone's actions, either juvenile or somebody between the ages of 20 and 26, which is sort of where the sciences led us. Counsel, let me ask you, following that reasoning, are all offenders that were 19 or 20 or 21 at the time of their sentencing have a claim under the proportionate penalties clause so we go back and resentence all of those people? Well, I think they're entitled to make a claim. I mean, certainly he hasn't even had the opportunity to do that. This isn't a case where he had. I think it would be different if he had a sentencing hearing where this mitigating evidence was presented before the judge and it was weighed. But this judge didn't think anything he did was mitigating. I mean, he didn't consider the fact that he turned himself in. He didn't consider the fact that he made an open guilty plea. You know, he didn't consider it an inculpatory statement. He didn't even in a statement in allocution. None of that was considered mitigating. And so I think that you can distinguish among cases. I don't think this has to be a situation where every defendant gets resentencing, but I think in this case, particularly considering that we now have a concession on an issue that we maybe could have had in 2019 and now we're here considering it, I think he should have an opportunity to plead his claim and get further proceedings. In this case, I will also point out that some of the things that we think of as mitigating, not only because of the developments and research on childhood trauma and brain development, but also just kind of where we are as a country, I don't think the 1990s, some of the same things would have necessarily been looked at as mitigating. So I think if you present, you know, the circumstances of someone's childhood, there's much more knowledge now as to how that might impact somebody's actions. And again, my client's never denied a series of his offense. He's not seeking to withdraw his plea. But I think under the unique circumstances of his case with a judge who I don't think was disposed to consider, I mean, he outright said he found nothing mitigating. And there wasn't an argument by defense counsel as to the same factors that we're considering now as they applied to young adults. And so because that didn't exist and because these attributes of youth, not just the fact that he's 20, but the attributes of youth were not considered, he should be allowed to pursue his proportionate penalties claim. Can I go back to the 214-01 versus the Post-Conviction Act problem here? Obviously, most of the cases we see generally today and other days are under the Post-Conviction Act. And these issues raised under the Post-Conviction Act. And obviously, we understand the Post-Conviction Act is very precise, different levels of how issues should be framed, pleading standards, et cetera, how we get to an evidentiary hearing, what kinds of issues can be raised. 214 is very different, obviously. 214-01 is, as we say, a device to vacate judgments within two years. It's usually almost always. The idea is that it's about new facts that have arisen in two years. And there are all kinds of issues that Petitioners have to work through in terms of a 214-01, due diligence and that kind of thing, that are not the same as the Post-Conviction Act. So here, we're kind of stuck. We're in this different world than of all the PC cases that we see, right? So Justice Holder, why don't I ask you some questions about, is this the right device? Can these arguments be raised? You're not arguing this is a void judgment, correct? No, I'm not arguing it's a void judgment. I can't argue it's a void sentence because that doctrine has been abolished. But I do think to the extent that they're similar, you're allowed to look at the record in this case and determine whether or not there's enough facts in here that would support us as applied challenge in a similar vein to the Post-Conviction Act. And you're allowed to consider the same facts that I pointed out in the brief, such as whether he's present for the motion to reconsider, the fact that no notice of appeal was filed, and considering due diligence. I'm not sure that it makes sense to say he can never file these claims in a petition for relief from judgment that he's limited to the Post-Conviction Act. I'm not sure that all of the jurisprudence, although there's not a lot on petitions for relief from judgment either in the criminal or in the civil context, but I'm not sure that that's the idea that he would be totally precluded from raising this ultimately fact-based challenge in a petition for relief from judgment as supported by the statute or any of that case law. Isn't there a two-year limitation on Breanna 2-1401 unless there's a void judgment? Well, no. The void judgment, you don't have to worry about the two-year limitation, but that's when you consider the due diligence. Then you consider whether or not... Tell me about the two-year limitation here. Well, the two-year limitation applies to whether there's fraudulent concealment and duress and other things that he would otherwise plead, but it's not... The two-year limitation on the timeliness has already been waived. That was part of the appellate court decision, that they waived that limitation because the State didn't file a response of pleading. So we're not... My understanding is we're not worrying about the timeliness. The State isn't challenging the appellate court's ruling, which already said they forfeited it by not filing a response of pleading. The reason we're not talking the language of 2-1401 is because the State forfeited the argument. On the timeliness issue. On the timeliness of the 2-1401. And I also argue that by not filing a response of pleading, they waived a due diligence and that anyway there was enough in this record to support relaxing due diligence. You know, we're in a unique situation because of the way this played out, that there wasn't a response of pleading, and for better or worse, the State got up there and said they didn't read the petition and didn't intend to file a response. That in and of itself is unlike other civil proceedings. But then we have an appeal where, you know, we still are sort of in flux, and I think even today we're still confused about what the pleading standards are going to be for as-applied challenges. We had a case in the September term with respect to the Post-Conviction Act. And, you know, under the unique facts in my client's case, now that the State has conceded that he's allowed to challenge his sentence despite the form of his guilty plea, he should at least get an opportunity to flesh that out with further proceedings. I'd argue remand is appropriate.  Just finish the 2-1401. Are you still arguing that the court had a sua sponte duty to reconsider it, recharacterize it? No. I didn't raise that in the petition for leave to appeal. I mean, after Stoker, it's basically unreviewable. I asked to have that. That was something that I asked. But, you know, he would still face the same timeliness issue in a post-conviction petition. Nothing has suggested that the State would waive timeliness in a post-conviction petition. Now, whether he could establish culpable negligence, probably reassert the same things. But, again, you know, I would just again point that this was a 2019 petition at some point. It's not like he's automatically guaranteed resentencing. I do think that he should get further proceedings, especially given the changing in the positions from the appellate court to this court. Counsel, to the merits, do you agree that he did not receive a de facto life sentence? I agree he didn't. Under our jurisprudence, you know, that would have to be over 40 years. But, as I've argued in the briefs, and I'm sure this court has heard many times, you're not precluded from raising a proportionate penalties challenge. And I do think, you know, that it, again, I think we looked at things different in the late 1990s than we do now. But I do think that putting these attributes of youth and discussions of childhood trauma and fleshing out some of these facts, which albeit are not fully fleshed out in these pleadings, but I do think he should be allowed to argue his case. And, I mean, this sentencing hearing, they characterized Mr. White as a merchant of misery, and the court did. And I think that, you know, I think there really wasn't, as we've seen in other cases, a weighing out of those mitigating factors. I don't think rehabilitation was adequately considered, as it might be, if we were properly considering the attributes of youth for a 20-year-old. And so, again, I would just add to conclude that the state's additional procedural challenges shouldn't be considered by this court, either because they weren't raised below or because the appellate court declined to consider them. While White asked this court to accept the state's concession and hold that Jones does not apply in the context of an open or blind guilty plea with no agreement as to the sentence and remand this matter for further proceedings on the remaining issues. Thank you very much. Counsel for the appellate. May I please support the opposing counsel? I am Assistant Attorney General Nick Moeller on behalf of the people. I think it's important to take a step back and look at what the court's actually considering today, because I'll admit the state's concession has taken us to a different place than the PLA suggested. But the state is not the only party that's changed its arguments. This, what the court is being asked to answer today is, was the pleading sufficient? Was the 214-01 petition sufficient? On its face. That does not mean factual development can show more. That does not go back to the varying now raised assertions of misconduct by their defense counsel or the judge at the time of trial. The question is, was the 214-01 petition as written sufficient to meet the pleading standards such that the circuit court was correct in denying? When we look at that, it's also important to consider that this court is not reviewing the reasoning of either the appellate court or the circuit court. It comes back to the ultimate judgment. Was that 214-01 petition defective on its face, or was it sufficiently well pledged? Counsel, what you're saying is very helpful, and I want you to continue, but I want to throw a question in. Help me understand the fact that the state did not file a response, how that plays into what you're explaining to us now. At this point, the only effective thing from the state not filing a response is that we are foreclosed, and we concede we are foreclosed from raising the statute of limitations, the two-year limitations period, as opposed to the separate pleading requirement of due diligence. So do we have to take as true, given the fact that the state didn't file a response? Is there anything that we have to take as true? How does that impact? Oh, sorry. No, go ahead. Only the allegations that were pledged in the petition. So it takes as true what was written in the petition, none of the assertions that have made sense. And when we look at the petition, when we're talking about the argument being put forth, the merits of defense for 214-01, what we're talking about is a proportionate penalties challenge based on defendant's views. When we look at due diligence, we have only the excuse that was put forth, the excuse or excuse in the equitable sense from the due diligence requirement. We have only the reasoning given by defendant that Miller hadn't come out yet, the appellate cases hadn't come out yet, we now know incorrectly extending Miller to the proportionate penalties clause. That was the only thing in the petition. This Court should not be considering further facts that have been speculated about or alleged about on the appellate process that weren't in the petition because the question is, was the petition as written sufficient before the Court? And there are three reasons it wasn't. And while it seems like a complicated case, it's only complicated because there are so many paths by which defendant loses. If you look at any individual path, it's a simple, straightforward answer. Defendant did not plead a sufficient 214-01 petition because he did not plead a claim that is cognizable on 214-01. He had no new facts that would change judgment at the time of trial. He did not plead a void judgment, and therefore 214-01 is not the right vehicle. Also, he did not have a meritorious defense because Hilliard is directly on point for the type of sentencing challenge he is bringing. A 40-year sentence is not disproportionate for an 18-year-old for attempted murder. Therefore, it can't be disproportionate for a 20-year-old for a completed murder. And finally, he can't show due diligence because he has no excuse in the petition ever explaining why he didn't bring this argument up at the time of trial, which is the first prong of due diligence, or why it took 20 years after that fact to bring it up, which is the second part of due diligence. Now, I'd like to turn first to 214-01. Let me ask you this. So you've explained why there is no merit to the petition. Should we make that decision, or should we remand it to the appellate court to make that decision because they didn't address that? At this point, there are two reasons that this court should make the decision. The first is that typically when this court remands, it is not talking about arguments that were not brought up by the appellate court. It's talking about claims. And while the appellate court, it's the ultimate claim brought by defendant, not which specific arguments brought by the parties about that claim that the appellate court chose to go with. Here, the appellate court considered his claim that his 214-01 petition was dismissed incorrectly, and it decided it was not. It did that based on waiver. Waiver supply of life is not meritorious. However, it did consider the claim. It's no different from other claims where the defendant or the state brings up multiple alternative arguments for why it should win, and when the appellate court picks one, it doesn't then go to the Supreme Court. And if that one argument was bad, even though other arguments would suffice to keep it alive, it's sent back to the appellate court because the ultimate claim was considered. And part of that and why forfeiture doesn't come into play on the state's part is that an appellee is allowed to raise any argument or basis supported by the record to show the correctness of the judgment below, even though it had not previously been advanced. That proposition would not make sense in a place where an appellate court considered a claim but not an argument, and therefore it would have to be sent back because we're already talking about a longstanding precedent for arguments that hadn't been raised in the appellate court, and that's why the state's able to make those arguments now. The second reason why it doesn't make sense to send this case back to the appellate court is just judicial economy. The elements of the case have been argued in this court. It's been briefed. It's a simple, straightforward answer. There is no reason to send a clearly meritless claim back down to the appellate court for another two years of litigation, I believe it's 25 years now after the original conviction was handed. Unless there's a further question, I'd like to turn then to why 214.01 is not the proper vehicle. 214.01 exists for two different purposes. The most common is that when there are facts that were not known at the time of a judgment that would have rendered the judgment or would have prevented the judgment from being rendered. That is the main reason. The second part is an equitable part that has come into play because 214.01 replaced old equitable remedies. Usually what that comes to mean is the legal claims that this court has talked about and that opposing counsel is hinting at are these legal claims, but if you look at them, they're almost always a voidless claim. We're talking a judgment that should not have been at the time it was rendered. There's some form of jurisdictional defect that means nothing should have ever taken place in the case, and that's why equitably the court goes back and allows you to bring those into 214.01 because you can bring those types of claims in any setting, really, given the nature of a voidless challenge. The only other claims the court has considered and actually ruled upon in the 214.01 context is in the sexually dangerous, I'm sorry, the SDP, I believe, sexually dangerous persons, and those are individuals who don't have access to the Post-Conviction Hearing Act, and so this court said under the equitable principles of 214.01, we have claims, legal claims, that can't be brought up in any other reason, and so we will extend 214.01 on that part because equitably it has to be done. But we're talking about a criminal defendant who's been convicted. He has access to the Post-Conviction Act. He had access to direct appeal for these types of claims, and so there's no reason to bring that equitable extension of 214.01 into the criminal context because the only reason they did it was because there was no PC Act in those circumstances. And so for that reason, because it doesn't fall into the categories for 214.01, the petition was not sufficiently well-pled for that reason alone, and it also means why it's hard to discuss the next prongs of, well, if we consider it could be brought under 214.01, how do we deal with the fact that 214.01 has elements saying, well, why didn't you bring this claim at the time and why did it take you so long, which are usually inherent on what was the underlying nature of this claim, the facts that you're bringing. But we can analogize in a way, and so I'd like to start with the meritorious version. Even if we accept that this can be brought under some context in the 214.01 sense, we then have to go through the elements of whether it is a meritorious defense and whether due diligence was followed both at the time of the judgment and then in the period following before the actual petition was filed. And the merits is straightforward in this case. The proportionate penalties clause doesn't ask about what did the judge consider. It doesn't ask what procedure was taking place. The proportionate penalties clause is is this sentence too long given the rehabilitative potential of defendant against the seriousness of the crime. I'm not saying there aren't claims that things were not considered properly by the court, that the trial court violated the Constitution or statute somehow in rendering the judgment of the sentence, but those are not the proportionate penalties claim. The proportionate penalties claim, which is what existed in the petition, is is this sentence too long given the rehabilitative potential. And so this argument that the trial court didn't consider any factors to be mitigating, does that not come into play? It does not, Your Honor, because first, that's not a proportionate penalties claim. That's a claim that you would bring on direct appeal if simply the court didn't do its job, didn't follow either the sentencing statutes laid forth what it has to consider or some sort of due process claim. But it is not a proportionate penalties claim, and therefore it doesn't come into play here. But I would like to address— Counsel, let me ask you, if we determine that we should analyze the merits of this claim and we find that there is no merit, do we have to reach the due diligence aspect? No, Your Honor. Each of the elements must be shown, and therefore if one is not shown, regardless of which the petition was not properly pled and its dismissal, sua sponte dismissal, was appropriate. I do want to approach just one more time. Although what the court considered and whether it considered is not ultimately relevant to 21401 and the proportionate penalties clause, I do want to make clear that the State disagrees with the reading of the record presented by a defendant. One, all of these factors were before the court because the court first had them in the 402 hearing, which while it's not on a record, the nature of a 402 conference is that both parties show the evidence and the mitigation and aggravation to give the court a way to give a proposed sentence. The court then had all that information and was considering it when he said in his sentencing, look, I thought 40 years was fair, I thought it was safe, then goes on to say that there's been no mitigation that would change that sentence. And I think it can only be read in context as a court because it's talking about the prior offer and the 402 conference. What it's really saying is I heard what you had before, I gave a sentence. I've heard nothing new to change that sentence. And the fact that the court considered something mitigating has to be taken from the fact that the court said, look, honestly I think this is a 60-year case. But he didn't give that 60-year case. He gave the 40-year sentence as he said in the 402 conference because clearly if he heard something, that would mitigate it. That the court missed or failed to consider the remorse of the defendant also mistreats the record. The defendant was not perfectly coming forward and accepting guilt. He said lots of things in his allocution that deflected guilt. The most common and the one pointed to by the trial court was he said I'm not a killer when he was being sentenced for admittedly putting a gun to a man's head and pulling the trigger because that man wouldn't do what he wanted. And the trial court rightly said, well, by definition, you're a killer. It kills him. So the court did not fail to consider, did not decline to consider mitigation. It merely had heard all the mitigation before and heard nothing new. But regardless, none of that matters for the proportionate penalties clause because it just is 40 years too much. And the only reason it would be given by petitioner or defendant is that he was 20 years old and therefore 40 years old is too long. But this court in Hiller had an 18-year-old. That 18-year-old tried to kill someone and failed. He received 40 years and this court said that's not against the proportionate penalties clause. Therefore, someone who was 2 years older, someone who accomplished the task of intentionally killing someone and received the same 40-year sentence can't logically have received a disproportionate sentence based on the reasoning present in petitioner's 214-01 petition, which is all this court has to consider when the question is was that petition sufficient. Petitioner also did not plead anything to support the diligence clause, the first one being why wasn't this brought at the initial trial. Nothing was said other than, well, Miller didn't exist, the appellate court hadn't extended Miller, and so I didn't know. However, even if we hold, excuse me, that's not reason because this court's seen in other contexts that though Miller in those cases did not come out, this court and all courts in Illinois have accepted since the 90s at least that youth and not just to the year of 18 is a mitigating factor. It's something that's always been considered, and the suggestion that someone else, a different judge, might have considered things differently now is not sufficient to say why defendant didn't raise a claim that was cognizable and understood of. You didn't, the mitigating events in my youth, that was a claim and there's no reason it could have been raised at trial. It couldn't have been raised on direct appeal. It couldn't have been raised in a post-conviction petition, and it couldn't have been raised in the 20 years since because it has to be two hurdles, both why wasn't this raised at sentencing and why did it take 20 years forth? And the fact, the only reason the court's been given is, well, Miller didn't exist yet, doesn't explain either of those principles. Also, the other arguments for why there was no due diligence or why due diligence should be excused are things like that have not been asserted in court before, at least not were asserted in the petition and weren't brought in any direct appeal or other collateral proceedings are things like that he was given bad admonishments, that he wasn't present at the motion to consider, counsel didn't argue everything he should have or didn't appeal. Those aren't in the petition. Those weren't raised in the venues where they could have been given relief. Those are types of claims. The state's not saying they're not actual constitutional claims. The problem is they're not 214.01 claims for sure, and even if they were, they weren't raised in this petition, so they're not properly before the court. But even if they were, all those claims about what happened at sentencing, what didn't happen at direct appeal, those only address the first argument of due diligence, of why didn't we bring this at the time of judgment. Even if all of those are true, defendant still has an answer, why 20 years? Why did it take so long? And that's something he has to answer or he has to be able to excuse, and there's been no reason why there was a 20-year absence, a 20-year gap that's different from any other prisoner who is pro se, who is indigent in the prison system. They are able to bring petitions. Post-conviction petitions are filed every day. That was the proper vehicle. It could have been raised far before this point, and because of that the trial court was right in dismissing the petition. So unless there are further questions, we would ask that this court affirm the appellant court's judgment and the judgment of the circuit court in dismissing the petition. Thank you. Thank you very much, counsel. Counsel for the appellant in reply. I'll go back to some of the points that opposing counsel made about the pleading in this case. A petition for relief from judgment, unlike a civil complaint, isn't a blank slate, and this court's jurisprudence, such as people being sent, some of the other civil cases like Warren County and Smith v.  all indicate that you can look to the prior proceedings, including the record, to determine the merits of the claim. So it's not simply a question of looking at exactly what was pleaded in the petition. You can also look at the record. And so to the extent the state now claims that he's confined to the pleadings, that's simply not accurate. That's not consistent with this court's own jurisprudence. The second thing I would point out is all of the arguments that the state is making in this court about what was considered at the sentencing hearing, whether there was something considered at the Rule 42 conference, those are disputed issues of fact. You can't consider them now. If there's a disputed issue of fact, this has to go back for further proceedings on his petition. We can't start speculating and making up, you know, how things were weighed and what was presented. The time for that was either file a responsive pleading or now, considering this entire record, does he need, you know, the basics of stating a claim? And if there's a factual dispute about exactly what was considered in terms of In terms of reliance on Hilliard, I would say that dealt with a specific issue of the firearm enhancements, whether it's unconstitutional because there's no discretion in determining whether to apply it. But even Hilliard didn't say you can never raise a proportionate penalties challenge based on these attributes of youth. And of course, in the context of any sentencing hearing, you know, the court needs all the information that exists. And that includes all of the things that we know since 2015 and even a little bit before about how trauma and other things affect the actions of a young adult. This was an as applied challenge, correct? It was. Was there anything pled that was unique to this person, unique to Mr. White or was it basically milligram and Roper? It was sad. It was all the brain science. He cited specific studies. You know, the general information that's out there. We've certainly seen it in the cases, milligram over Jones and all those cases. Is there anything planned as to him as applied to him? Well, throughout the petition he makes claims about, you know, being taken advantage of because he was young and, you know, has other complaints about his counsel, but no, there's not enough. There's not tying the brain science to him in the petition. It could be fleshed out more. He wrote 11 pages. It could definitely be fleshed out more as to, you know, his particular circumstances. But again, I just have to point out, you know, the record counts. This isn't a case where the record doesn't count for anything. He's not even. Back to this idea, and we've seen this play out in the PC area, and I have to kind of think through how that works in 1401, but we've seen these cases where we said just saying there's brain science doesn't address the specifics of the individual. This isn't as applied challenge. What has he shown as to him, how he is, the statute is, I mean, the sentence was unconstitutional as to him individually and not all people who are emerging adults. What does he show? The record indicates that he was raised primarily by his grandmother. His father passed away at a young age. He had no relationship with him at all. I will add that his mother was a drug addict, and they moved from house to house. He dropped out of school. How do those things fit with the brain science that you have? All of those things, you know, they add, even the impulsivity of this crime, you know, shows that he wasn't acting like a full-fledged adult. I mean, he grew up without sort of the same benefit of maternal and paternal influences that other young people and other teenagers and children are privileged to have. He, you know, he ended up, you know, likely as a matter of peer pressure working security in this complex. He got mad about a fight. I mean, these types of factors, the actions that he took are informed by his own personal experiences. And the idea that he'd have to cite chapter and verse of everything in his background in order to at least move forward on his claim, I don't think is a fair reading of any of the PRJ law or even of this court's as applies challenges. And, you know, to go on to the issue of cognizability. Well, certainly the appellate court thought this was a cognizable claim. The state never raised it there either, but they treated this as if this could go forward on a petition for relief from judgment. So I don't see any basis for saying that he's foreclosed, nor do I think there's any case law saying that where we have categories of claims that can be raised in the petition for relief from judgment. Is it as clear cut as some of our other vehicles? Would it have been preferable to raise it in a petition? Perhaps, but that doesn't mean that he's prevented from doing it. And, you know, again, the notion that we're bound by Leon Miller, which didn't consider any of this brain sciences, and which is from 2002, shouldn't be the end all of this discussion. I think there's been a lot of effort to put up procedural hurdles to pursue these as applied challenge at the expense of having a developed body of case law on the actual issue. Counsel, let me ask you a question very quickly. The state says we don't need a remand. You maintain that we do need a remand. Tell me specifically what we're going to learn if the case is remanded. Well, you know, again, I would point out that the idea that we're foreclosed from considering whether due diligence was established, or if there's a meritorious claim solely by reading the pleading is not borne out by this court's case law, that you can consider the record. The state invited the court not to consider the merits of this claim and just consider the issue of whether the open guilty plea foreclosed to sentencing challenge, and the court expressly declined to consider due diligence. So if you send it back, you know, White can argue, as he has in his appellate court briefs, that there's reasons to relax the due diligence requirement here, and that he at least has pled enough or there's a material issue of fact here that warrants further proceedings. And, you know, on a final note, I would just say there are cases, and I cited them in the appellate reply brief on page 11, that talk about even, you know, demanding for further as-applied proceedings on an as-applied challenge. You know, the appellate court can do that. But nothing that the state argued in its presentation suggests that this is completely foreclosed or that we're only considering the pleading. That's not what Vincent says. That's not what this court's other cases say. And I would ask, consistent with appellate procedure, that this case go back to the appellate court. Anything else? Thank you. Thank you, counsel. This case, Agenda Number 3, Number 129767, People of the State of Illinois v. Cedric White, will be taken under advisement. Thank you both for your arguments.